**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROLE N. HILDEBRAND, et. al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 06-5439 |
| | : | |
| v. | : | |
| | : | |
| DENTSPLY INTERNATIONAL, INC., | : | |
| | : | |
| Defendant. | : | |

**Jones II, J.**                                                    **January 25, 2010**

## MEMORANDUM

Contending that named Plaintiffs Dr. Carole N. Hildebrand ("Dr. Hildebrand") and Dr. Robert A. Jaffin ("Dr. Jaffin") practice dentistry in a corporate capacity rather than individually, Defendant Dentsply International, Inc. ("Dentsply") has moved to dismiss Dr. Hildebrand and Dr. Jaffin for lack of standing to bring claims or serve as class representatives in the above-captioned matter. Plaintiffs oppose the Motion on the grounds that Dentsply has long known that Drs. Hildebrand and Jaffin are suing not as individuals but on behalf of their respective periodontal practices. In addition, Plaintiffs have moved for leave to file an amended Complaint, in order to substitute the periodontal practices of Drs. Hildebrand and Jaffin as named Plaintiffs. Presently before the Court is Dentsply's Motion to Dismiss for Lack of Standing (Dkt. No. 63) ("Motion"), Plaintiffs' Opposition thereto and Countermotion for Leave to File an Amended Complaint (Dkt. No. 69) ("Countermotion"), Dentsply's Opposition to Plaintiffs' Countermotion (Dkt. No. 70) ("Dentsply Opp."), and Plaintiffs' Reply in support of their Countermotion (Dkt.

No. 71) ("Pls.' Reply").  For the reasons set forth below, Dentsply's Motion to Dismiss will be granted and Plaintiffs' Countermotion will be denied.

In addition, as consequences of these decisions, Counts I and II will be dismissed as to the putative Pennsylvania periodontal class members and as to the putative New Jersey class members; Count III will be dismissed in its entirety; and Dentsply's Motion to Dismiss or for Judgment on the Pleadings on Count II (Negligent Design) as to New Jersey Plaintiffs and Count III (New Jersey Consumer Fraud Act) in Its Entirety Based on New Controlling Authority (Dkt. No. 87) will be denied as moot.

## II.    BACKGROUND AND FACTS

To the extent that the merits of the pending Motion and Countermotion hinge upon the procedural background of the action, the Court takes this opportunity to set forth the basic history of the case, lengthy and long-standing as it is.  This purported class action for breach of warranty and negligent design relates to alleged defects in the Cavitron ultra scaler, a tool which generates a pressured, pulsating water stream through a handpiece at the end of a flexible tube and is used by dental professionals to remove calculus and tartar from teeth, as well as by periodontists to debride subgingival tooth, root and bone surfaces (the "Cavitron").[1]  Amended Complaint (Dkt. No. 29) ("Am. Compl.") ¶ 20.  Dentsply manufactures, markets and sells various versions and models of the Cavitron ultrasonic scaler and distributes them for sale nationwide, including in New Jersey and Pennsylvania.  Am. Compl. ¶ 6.  On December 12, 2006, Drs. Hildebrand and

---

[1] The Cavitron ultra scaler is a Class II medical device under the Medical Device Amendments to the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 360, *et seq.* and regulations thereunder, 21 C.F.R. 800, *et seq.*  *See* Am. Compl. ¶ 20.

Jaffin brought this action on behalf of themselves and a putative class against Dentsply,[2] claiming that the Cavitron's internal tubing "was hospitable to the formation of biofilm, which created a risk of transmitting pathogens to patients during routine dental prophylaxis and periodontal procedures." Am. Compl. ¶ 47. According to Plaintiffs, "[u]nder all circumstances, the Cavitron was and is unsafe for patient use without the purchase of expensive additional or substitute equipment or systems." *Id.* This defect, allegedly "known to Dentsply but not disclosed to plaintiffs or plaintiff class members," led Drs. Hildebrand and Jaffin to file claims for breach of warranty and negligent design on behalf of all putative class members. Am. Compl. ¶¶ 42-58.[3] In addition, they brought a claim for violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*, on behalf of the proposed New Jersey class members. Am. Compl. ¶¶ 59-67. The case was assigned at that time to the Honorable R. Barclay Surrick.

After an initial pretrial conference, the Court issued a scheduling order which held, in part, that the Plaintiffs were free to amend their Complaint to add new parties no later than April 23, 2007 (Dkt. No. 26), a deadline which was extended to May 7, 2007 upon Plaintiffs'

---

[2]In their original Complaint (Dkt. No. 1) ("Compl."), Drs. Hildebrand and Jaffin also named a large number of unidentified defendants ("Does 1-100") as "legally responsible in some manner for the marketing, sale, or distribution of Cavitron ultrasonic scalers in New Jersey and Pennsylvania." Compl. ¶ 6. However, upon amending the Complaint, Plaintiffs withdrew these unidentified Defendants from the pleadings. *See* Am. Compl.

[3]In their original Complaint, Drs. Hildebrand and Jaffin also brought claims for breach of contract and punitive damages on behalf of all class members. *See* Compl. ¶¶ 51-57, 74-75. On January 2, 2007, Dentsply moved to dismiss Plaintiffs' claim for punitive damages for failure to meet the case-or-controversy requirement of Article III, the pleading requirements of the federal rules, and the substantive requirements for punitive damages under state law (Dkt. No. 4). On January 31, 2007, the parties jointly stipulated to the dismissal of Plaintiffs' claim for punitive damages (Dkt. No. 22). The claim for breach of contract was then withdrawn with the filing of the Amended Complaint. *See* Am. Compl.

unopposed motion (Dkt. No. 28). Plaintiffs then filed their Amended Complaint on May 7, 2007, adding Dr. Mitchell Goldman and Dr. W. Scott Barron as named Plaintiffs and putative class representatives.

On July 30, 2007, Judge Surrick ratified the parties' stipulation to withdraw Dr. Barron and to substitute Dr. Robert P. Forte (Dkt. No. 35). That same day, Plaintiffs moved to certify a class of "all dentists, periodontists, dental and periodontal practices, and dental and periodontal schools and institutions (a) who are citizens of the State of New Jersey or Commonwealth of Pennsylvania, respectively, (b) who purchased Cavitron ultrasonic scalers during the time period from January 1, 1997 to the date of the trial, and c) who were using a public water source for their Cavitrons at the time of installation." Memorandum of Law in Support of Motion of the Plaintiffs for Class Certification (Dkt. No. 36) at 1.[4]

On August 22, 2007, Judge Surrick granted Plaintiffs' unopposed motion to withdraw Dr. Forte as a named Plaintiff and putative class member (Dkt. No. 40). Following a series of discovery disputes, most of which have since been resolved,[5] Dentsply filed this Motion to Dismiss Dr. Hildebrand and Dr. Jaffin for Lack of Standing on January 14, 2008. In addition, on July 31, 2008, Dentsply filed a Motion to Dismiss or for Judgment on the Pleadings on Count II (Negligent Design) as to New Jersey Plaintiffs and Count III (New Jersey Consumer Fraud Act) in its Entirety Based on New Controlling Authority (Dkt. No. 87).[6] On April 28, 2009, this case

---

[4]Plaintiffs' Motion for Class Certification remains pending.

[5]Dentsply's Motion to Compel Discovery Responses (Dkt. No. 41) remains pending.

[6]While Dentsply's Motion to Dismiss or for Judgment on the Pleadings on Counts II and III has remained pending to date, the Court's decision herein renders it moot. *See infra*, Section IV.

was reassigned from Judge Surrick to the Honorable C. Darnell Jones II for all further proceedings (Dkt. No. 96).

For jurisdictional purposes, the Court notes that Dr. Hildebrand is a periodontist residing in Philadelphia County, Pennsylvania and is licensed by the Commonwealth of Pennsylvania to practice and practices dentistry and periodontics in Philadelphia, Pennsylvania. Am. Compl. ¶ 1. Dr. Jaffin is a periodontist residing in Bergen County, New Jersey and is licensed by the State of New Jersey to practice and practices dentistry and periodontics in Hackensack, New Jersey. Am. Compl. ¶ 2. Dr. Goldman is a dentist residing in Montgomery County, Pennsylvania and is licensed by the Commonwealth of Pennsylvania to practice and practices dentistry in Cheltenham, Pennsylvania. Am. Compl. ¶ 3. Drs. Hildebrand, Jaffin and Goldman all purchased Cavitrons. Am. Compl. ¶ 1-3. Dentsply is a Delaware corporation doing business in the United States, including in New Jersey and Pennsylvania, with its principal place of business in York, Pennsylvania. Am. Compl. ¶ 5. Plaintiffs allege that the matter in controversy exceeds $5,000,000; as such, the Court maintains diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2).

## III.	Dentsply's Motion to Dismiss

### A.	Legal Standard

Although Dentsply does not cite to any specific Rule, the Court considers a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1). *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "When considering a motion to dismiss for lack of standing, the trial court must accept as true all material allegations in the plaintiff's complaint." *Blunt v. Lower Merion School Dist.*, 559 F. Supp. 2d 548, 565 (E.D. Pa. 2008) (*citing Warth v.*

*Seldin*, 422 U.S. 490, 501 (1975)).  On a motion to dismiss for standing, the plaintiff "'bears the burden of establishing' the elements of standing."  *Ballentine*, 486 F.3d at 806 (citing *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)).  However, "general factual allegations of injury resulting from the defendant's conduct may suffice."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).[7]

## B.      Discussion

Dentsply argues that because Drs. Hildebrand and Jaffin practice dentistry in a corporate capacity rather than as individuals, they lack standing to bring their claims or serve as class representatives.  Motion at 1.  Dr. Hildebrand is the sole member of Center City Periodontics, P.C., a Pennsylvania professional corporation for which she has practiced since 1984; Dr. Jaffin is one of three members of Affiliated Periodontists of North Jersey, P.A., a New Jersey professional association for which he has practiced since 1976.  *Id.*  According to Dentsply:

---

[7]"'In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth*, 422 U.S. at 501).  The Third Circuit has summarized the constitutional requirements for standing as follows:

> (1) the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

> (2) there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and

> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Storino*, 322 F.3d at 296.

each corporate entity (and not the periodontist who filed this suit in his or her individual capacity) is the actual litigant seeking damages in this case. Having chosen to do business in the corporate form, these periodontists cannot sue as individuals for alleged damages incurred by their practices pursuant to a purchase of professional equipment.

*Id.*

Under both New Jersey and Pennsylvania law, Dentsply is correct that neither Dr. Jaffin nor Dr. Hildebrand may act as a substitute for his or her corporate entity in bringing claims involving the allegedly defective Cavitrons. *See, e.g., Lyon v. Barrett*, 445 A.2d 1153, 1156 (N.J. 1982) (rejecting argument by sole member of professional corporation that he and corporation were the same). A corporation is a "distinct and separate entity, irrespective of the ownership of the stock, and the fact that one person owns all its stock does not make him and the corporation one and the same." *United Nat'l Ins. Co. v. M. London, Inc.*, 487 A.2d 385, 391-92 (Pa. Super. 1985) (same); *see Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970) ("A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets."). In turn, an individual who lacks standing may not represent a class. Without personalized, redressable injury as required for standing to assert claims on his own behalf, neither Dr. Hildebrand nor Dr. Jaffin has standing to assert these claims on behalf of the purported class members. *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000).

Plaintiffs raise no defense to Dentsply's arguments. In fact, they explicitly oppose Dentsply's Motion only "because Dentsply has long been aware that Drs. Hildebrand and Jaffin

are suing not as individuals but rather on behalf of their respective periodontal practices;" nowhere do they claim that Dr. Hildebrand or Dr. Jaffin should remain a party in her or his individual capacity.  Dentsply Opp. at 1.  Plaintiffs' briefing focuses exclusively on substituting Center City Periodontists and Affiliated Periodontists for Drs. Hildebrand and Jaffin, respectively.  In so doing, Plaintiffs appear to concede that Drs. Hildebrand and Jaffin should be dismissed from the case.  Always pleased to find opposing parties in agreement, be that understanding tacit or otherwise, and in light of the analysis set forth above, the Court grants Dentsply's Motion.  However, as discussed below, Plaintiffs have not demonstrated good cause to justify amendment to the pleadings at this juncture, and Drs. Hildebrand and Jaffin will be dismissed as named Plaintiffs and putative class representatives.

## IV.     Plaintiffs' Countermotion for Leave to Amend

### A.     Legal Standard

Under Federal Rule 15(a)(2), a party may amend its pleadings with the court's leave, "which should be granted when justice so requires; only in the face of prejudice, bad faith, undue delay or futility should amendment be denied."  Rule 15(a)(2) places the burden to make such a showing on the party opposing the amendment.  Furthermore, a court shall not dismiss an action for failure to prosecute it in the name of the real party in interest, if, within a reasonable time after an objection, the real party in interest ratifies, joins or is substituted into the action.  *See* Fed. R. Civ. P. 17(a)(3).

However, where a party seeks to amend its pleadings after a deadline set by court order, the party is effectively asking the court both to amend the scheduling order and for leave to amend its pleadings, and the party must show good cause in order to procure the court's consent.

*See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the Judge's consent."). Once the court files a pretrial scheduling order pursuant to Rule 16 which established a timetable for amending pleadings, that rule's standards control. *See* Fed. R. Civ. P. 16(e).[8]

### B. Discussion

#### 1. Rule 16(b)

Despite Plaintiffs' best efforts to focus the court on the more liberal pleading standard of Rule 15(a)(2), Rule 16(b) prevails here, <u>as Plaintiffs did not move for leave to amend the Complaint to substitute the parties at issue here until eight months after the deadline set by the Court for such amendments</u>, and only then in response to Dentsply's Motion. *See supra*, Section III.A and n.8.[9] The question before the Court is whether Plaintiffs have shown "good cause" for their failure to comply with the Court's pretrial scheduling order. *See Chancellor*, 501 F. Supp. at 701. "Good cause" under Rule 16(b) focuses on the diligence of the party seeking the

---

[8]While the Third Circuit has not explicitly addressed the tension between Rules 15(a) and 16(b), other district courts in this Circuit have come to the conclusion that "once the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp.2d 695, 701 (E.D. Pa. 2007) (citing to seven Circuit courts in applying the "good cause" standard to motion for leave to amend pleading after scheduling order deadline had passed); *see Componentone, L.L.C. v. Componentart, Inc.*, No. 02:05cv1122, 2007 WL 2580635, at *2 (W.D. Pa. Aug. 16, 2007) (same). Indeed, the Third Circuit has suggested as much, albeit indirectly. *See, e.g., E. Minerals & Chem. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (affirming district court's denial of motion to amend complaint six months after amendment and joinder deadlines had expired).

[9]As Dentsply argues, Rule 15 and Rule 16 are not exclusive. *See E. Minerals*, 225 F.3d at 340 (agreeing with district court's finding that party was compelled to comply with Rule 16(b) before seeking amendment under Rule 15(a)).

modification of the scheduling order. *See* Fed. R. Civ. P. 16, Advisory Committee Note (1983) ("the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension"); *Chancellor*, 501 F. Supp. at 701 (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (holding that Rule 16(b)'s "good cause" standard focuses on a party's diligence); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."); 6A Charles A. Wright, Arthur R. Wright & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1522.1, at 231 (2d ed.1990) (noting that Rule 16(b)'s "good cause" standard "require[s] the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension")). Thus, "if the party was not diligent, there is no 'good cause' for modifying the scheduling order and allowing the party to file a motion to amend its pleading." *Chancellor*, 501 F. Supp. 2d at 701 (citing *Johnson*, 975 F.2d at 609 ("If [a] party was not diligent, the inquiry should end.").

Where, as here, the party knows or is in possession of the information that form the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent. *Chancellor*, 501 F. Supp. 2d at 702 (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) ("[T]he same facts were known to [the plaintiff] from the time of its original complaint to the time it moved for leave to amend.")); *Parker v. Columbia Pictures Indus.*, 204 F.3d, 326, 341 (2d. Cir. 2000) (affirming the district court's denial of plaintiff's motion to amend for lack of "good cause" because the plaintiff possessed all the information he needed to support a breach of contract claim before he filed suit, "and nothing he learned in discovery or otherwise altered that fact"); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1471,

1419 (11th Cir. 1998) ("[T]he information supporting the proposed amendment to the complaint was available to [the plaintiff] even before she filed suit.").  Here Plaintiffs rely solely on the fact that "Dentsply has long been aware that Drs. Hildebrand and Jaffin are suing not as individuals but rather on behalf of their respective periodontal practices" in support of their Countermotion. Countermotion at 1.  They fail to acknowledge the underlying truth: if Dentsply has "long been aware" of Drs. Hildebrand and Jaffin's intention to appear as corporate representatives, not individuals, then Plaintiffs have been aware of the same for just as long.[10]

The presumption of non-diligence may be rebutted by a cogent explanation as to why the proposed amendment was not included in the original pleading.  *See Chancellor*, 501 F. Supp. 2d at 702.  However, Plaintiffs merely try to suggest that Dentsply bears the burden of justifying its delay in seeking to dismiss Drs. Hildebrand and Jaffin based on this knowledge, when in fact it is Plaintiffs who must explain why they did not earlier seek to amend the Complaint, given their knowledge that Drs. Hildebrand and Jaffin were misrepresented as individual parties to this action.  Far from satisfying Rule 16's "good cause" requirement, Plaintiffs offer no justification at all for their failure to seek leave to amend their Complaint prior to the Court-ordered deadline for doing so.[11]  Because Plaintiffs possessed the relevant knowledge for naming Drs. Hildebrand

---

[10]This leaves aside the fact that Dentsply may have learned of Drs. Hildebrand and Jaffin's corporate roles only during discovery, well after the extended deadline for amending pleadings had passed.  *See* Motion at 7 n.7.  Plaintiffs make no such explicit argument as to their own knowledge or when it may have changed.

[11]Plaintiffs contend that their failure to name the appropriate parties in accordance with the Court's scheduling order was "honest, understandable, and technical error."  Pls' Reply at 9. However, in support of this position, they cite only the "confusion" caused by Cavitron sales invoices, repair records and credit card bills issued to Dr. Carole Hildebrand and Dr. Jaffin in their individual names, albeit in some instances including the name of the corporate entity.  *See id.* (citing Ex. D to Pls' Reply).  No explanation has been provided as to how these documents

and Jaffin as corporate representatives, not individual Plaintiffs, at the outset of the litigation and have not proposed a clear and cognizable justification for the eight-month delay beyond the time set forth in the scheduling order, under Rule 16(b), they have failed to show "good cause" to allow the amendment. *See id.*[12]

### 2. Rule 15(a)

Even if the Court were to accept Plaintiffs' invitation to analyze its Countermotion under Rule 15(a)'s liberal pleading standard alone, it could not conclude that allowing Plaintiffs to amend their Complaint at this late date would be in the interest of justice. Leave to amend may be denied in the face of undue delay, bad faith or dilatory motive–some or all of which may apply in this instance. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Certainly, failing to seek an amendment until eight months after the Court-imposed deadline had passed–despite long-term knowledge of the information supposedly requiring amendment–constitutes undue delay. The Court is more disturbed by what appear to be Plaintiffs' efforts to use the allegedly improper

---

fostered confusion. Moreover, this argument flies in the face of Plaintiffs' continued refusal to allow Dentsply to depose the corporate entities at the same time that they now appear to acknowledge that the corporate entities were in fact the correct parties.

[12]In addition to Rule 15(a), Plaintiffs rely on Rule 17(a) as grounds for leave to amend their Complaint. Regardless of its interaction with Rule 16, however, Rule 17(a)(3) provides for the substitution of a real party in interest "when determination of the proper party to sue is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17, Advisory Committee Note (1966); *see also Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 n.8 (3d Cir. 1995). Plaintiffs have offered no explanation as to why it would have been "difficult" to determine that the corporate entities, rather than Drs. Hildebrand and Jaffin as individuals, were the proper parties. The only "mistake" Plaintiffs have acknowledged to the Court is that they were "unaware that it was technically necessary to name the corporate practice groups of Drs. Hildebrand and Jaffin until Dentsply filed its Motion to Dismiss for lack of standing." This is not enough. *See Chancellor*, 501 F. Supp. 2d at 702 ("Mere carelessness on the part of the attorney does not supply a cognizable justification for the delay.").

Amended Complaint "to shield the corporate entities from discovery that they would have otherwise been required to provide," and its apparent insouciance in so doing. Dentsply Opp. at 12.

Plaintiffs insist repeatedly that substituting, as named Plaintiffs, the corporate entities for whom Drs. Hildebrand and Jaffin practice would be merely a "technical correction to the pleadings" which would "effect no substantive change." Countermotion at 1-2, 6.[13] Perhaps as egregiously, Plaintiffs claim that the "identity of interests between Drs. Hildebrand and Jaffin and their respective practices are identical" and the "proposed amendment would only be a formal change of the names of the parties to the complaint." Countermotion at 7. To the contrary, if designated as a Rule 30(b)(6) deponent on behalf of Affiliated Periodontists, for instance, Dr. Jaffin would have been obligated to educate himself on the deposition notice topics and to testify about information "known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). In his individual capacity, however, Dr. Jaffin was required only to testify about what he *personally* knew and remembered. Yet Plaintiffs refused to allow Dentsply to depose the corporate entities, arguing that the corporate depositions were "harassing" and that

_____

[13]In fact, in order to avoid depositions of the corporate entities, Plaintiffs filed a motion to quash the 30(b)(6) designations of Affiliated Periodontists and Center City Periodontists, as well as the deposition of Dr. Jaffin's partner, Dr. Akshay Kumar. *See* Dkt. No. 48. However, the parties temporarily resolved the discovery dispute without Court intervention by agreeing to withdraw the motion to quash until the Court issues its rulings on Dentsply's motion to compel discovery (Dkt. No. 41). Plaintiffs themselves admit that Dr. Kumar's representation that he was not a member of the putative class prompted Dentsply to agree to withdraw it subpoena for Dr. Kumar's deposition. *See* Countermotion at 5. This only proves Dentsply's point as to why Dr. Jaffin should not be allowed to represent the corporate entity. Dentsply would only need to depose Dr. Kumar if the periodontal practice, *not Dr. Jaffin*, were the named Plaintiff; as one-third of the practice, Dr. Kumar's class representative status (or lack thereof) becomes relevant.

Dentsply had fully deposed the "named Plaintiffs." Dentsply Opp. at 3 (citation omitted).[14]

Discovery has since closed, with no opportunity for Dentsply to depose the corporate entities on topics that would not necessarily include personal knowledge of Drs. Hildebrand or Jaffin. *See, e.g., In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (denying leave to add class representatives because reopening class discovery and attendant delay is "precisely the sort of prejudice that justifies denial of a motion to amend"). Simply repeating that the "interests between Drs. Hildebrand and Jaffin and their respective practices are identical" does not make it so. *See, e.g.,* Pls.' Reply at 6.

Furthermore, there are clear signs that the interests of the individuals are not in fact identical to those of the corporate entities. For instance, Plaintiffs admit that Dr. Jaffin's partner, Dr. Kumar, has signed an affidavit asserting that he does not consider himself a class member and that his "knowledge of the purchase, use and maintenance of the two Cavitrons [used by Dr. Jaffin at Affiliated Periodontists] was minimal." Dentsply Opp. at 5 (citing Ex. E to Dentsply Opp.). Any damages suffered by Affiliated Periodontists are suffered by Dr. Jaffin *and* Dr. Kumar. As Dr. Kumar has affirmatively disavowed any membership in the putative class, this conflict strikes at the heart of Dr. Jaffin's adequacy as a class representative. If the partnership is divided in its interests, it can hardly purport to represent all New Jersey dental and periodontal practices. Plaintiffs' pleading has prevented Dentsply from assessing these potential conflicts as

---

[14]Plaintiffs cite deposition testimony that supports their position that Dentsply was aware the Plaintiffs considered Drs. Hildebrand and Jaffin to be acting as corporate representatives. *See* Countermotion at 4 (citing Ex. D to Countermotion). Again, however, whether Dentsply was aware of Plaintiff's position as it arose at depositions is irrelevant to whether Plaintiffs had good cause for failing to seek an amendment of the Complaint after the Court's deadline.

it defends against Plaintiffs' class certification motion.[15]

As the Court finds that Rule 16(b) controls its analysis, the Court does not deny Plaintiffs' Countermotion on the basis of prejudice Dentsply would suffer if amendment were allowed at this late date, *per se*.[16] However, the Court notes that said prejudice would indeed result from such amendment and cannot be tolerated even under Rule 15(a)'s more relaxed standard. Despite Plaintiffs' contention that class certification would in no way be impacted by the substitution of their respective corporate entities for Drs. Hildebrand and Jaffin, the propriety of certification would in fact be directly implicated. Dentsply articulates the dangers succinctly:

> First, any economic losses suffered are necessarily those of the corporate entity and not merely the shareholder. Second, the individual considerations that factor into a professional corporation's decision to purchase medical equipment are often materially

---

[15]Plaintiffs attempt to persuade the Court that Dentsply's agreement to treat practitioners and their corporate practices as interchangeable in a similar case in California State Court undermines their refusal to do so here. *See* Pls.' Reply at 10 (citing *Bruce Glover, D.D.S. v. Dentsply Int'l, Inc., et al.*, No. BC279973 (Superior Court of California)). However, as Plaintiffs themselves acknowledge, the class definition to which Dentsply agreed in *Glover* explicitly included an allowance that if class members "practiced through a partnership or professional corporation, they shall have an option to submit their claims either individually or jointly in the name of the business entity which sustained losses." Ex. J to Pls.' Reply. The proposed class definition in the current case includes no such language, nor has Dentsply agreed to any such language. The inclusion of such language might well reflect the satisfactory taking of an entirely different body of discovery by Dentsply in the *Glover* case.

[16]Rule 15 analysis focuses on prejudice suffered by the party opposing the amendment of the pleadings. *Chancellor*, 501 F. Supp. 2d at 702, n.5 (citing *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). It is unclear how or if prejudice plays a role in Rule 16's "good cause" analysis. *Chancellor*, 501 F. Supp. 2d at 702, n.6 (noting that Ninth Circuit does not consider prejudice in Rule 16 analysis, while Fifth and Sixth Circuits factor prejudice into decision). While it need not reach the issue, the Court here defers to its sister court's conclusion "that examining the prejudice to the opposing party would shift the inquiry from the conduct of the moving party to the burden on the non-moving party, thus eviscerating the requirement that the moving party show 'good cause.'" *Id.*

> different from an individual shareholder's considerations. ... [T]hese considerations are precisely what form the bases of the putative class members' claims and Dentsply's defenses.

Motion at 4 n.6. The opportunity for Dentsply to take any discovery of the corporate entities has long since passed. Plaintiffs are represented by experienced, capable counsel–attorneys who have previously demonstrated their ability to facilitate the timely substitution of named Plaintiffs in this action. *See* Dkt. No. 29.[17] The Court cannot countenance their failure to do so in this instance, and more distressingly, their failure to provide the Court with any legitimate explanation as to why.

## IV. DISMISSAL OF SUBCLASS CLAIMS

In light of its dismissal of Dr. Hildebrand (the only named periodontal Plaintiff residing or practicing in Pennsylvania) and Dr. Jaffin (the only named Plaintiff residing or practicing in New Jersey), the Court is compelled to dismiss all counts brought on behalf of the purported Pennsylvania periodontal class members and on behalf of the purported New Jersey class members for lack of subject matter jurisdiction, because Drs. Hildebrand and Jaffin's claims are moot:[18]

---

[17]As noted above, *supra* Section II, Judge Surrick allowed Plaintiffs to amend their pleadings such as to add new parties until May 7, 2007, at which point Plaintiffs did so amend. *See* Dkt. No. 29. While Plaintiffs did subsequently substitute a named Plaintiff on July 30, 2007, they did so with Dentsply's consent, simultaneously moving to certify the class. *See* Dkt. No. 35. Plaintiffs' August 22, 2007 (Dkt. No. 40) amendment was equally unopposed; furthermore, Plaintiffs withdrew a named Plaintiff on that date but did not seek to add any new parties as they do here.

[18]"Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (internal citations omitted).

> Once a class has been certified, mooting of the class representative's claims does not moot the entire action because the class acquires a legal status separate from the interest asserted by its named plaintiff. Litigation may continue because the stake of other class members is attributed to the class representative. However, when claims of the named plaintiffs become moot before class certification, dismissal of the action is required.

*Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) (citations omitted) (district court lacked subject matter jurisdiction because of mootness of plaintiff's claims and lack of class action certification); *see Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) (dismissal of class action is required when claims of named plaintiffs become moot before class certification).[19] No named periodontal Plaintiff or named New Jersey Plaintiff purchased Cavitron scalers during the time period sought to be certified, and as such cannot represent such purported class members. *See McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 473 (E.D. Pa. 2009) (in antitrust conspiracy case, purchasers of baby products lacked standing with respect to proposed subclass defined as purchasers of four or six-piece bedding sets made by particular manufacturer and sold by defendant retailer during specified period, as named plaintiffs admitted that none of them bought bedding set from defendant retailer); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 157-58 (E.D. Pa. 2009) (named plaintiffs lacked standing to bring claims under laws of states where no named plaintiff was located and where no member of a named plaintiff purchased drug at issue).

---

[19]A named plaintiff whose individual claim has been dismissed may continue in his representative capacity to litigate class certification issues in order "to argue a certification motion that was filed before his claims expired and which the district court did not have a reasonable opportunity to decide." *Lusardi*, 975 F.2d at 975. However, Drs. Jaffin and Hildebrand may not avail themselves of this exception, as their claims were never live, even at the point at which Plaintiffs filed their class certification motion. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (where none of the named plaintiffs purporting to represent a class meets the case or controversy requirement, none may seek relief on behalf of himself or any member of the class).

# V. CONCLUSION

The Court is aware that its decisions here have serious repercussions, particularly for the purported Pennsylvania periodontal class members and the purported New Jersey class members. However, Plaintiffs have flouted the Court's scheduling order for what appears to be tactical advantage and have provided no good cause for failing to seek further amendment to the Complaint in a timely manner. To seek to substitute named Plaintiffs well after the close of discovery and extensive litigation, despite Plaintiffs' long-standing knowledge of the correct parties to be identified, is unacceptable. "It is too late to say 'Never mind!' and scoot off in a different direction." *Eckstein v. Balcor Film Investors*, 58 F.3d 1162 (7th Cir. 1995) (district court did not abuse its discretion in denying plaintiffs leave to amend complaint to add class action claim where case was seven years old and underlying events happened over a decade before suit was filed).

For the reasons set forth above, the Court will (1) grant Dentsply's Motion to Dismiss Dr. Hildebrand and Dr. Jaffin for Lack of Standing; (2) deny Plaintiffs' Countermotion for Leave to File an Amended Complaint Substituting Corporate Entities for Individual Plaintiffs; (3) dismiss Counts I and II as to the putative Pennsylvania periodontal class members and as to the putative New Jersey class members; (4) dismiss Count III in its entirety; and (5) and deny Dentsply's pending Motion to Dismiss or for Judgment on the Pleadings on Count II (Negligent Design) as to New Jersey Plaintiffs and Count III (New Jersey Consumer Fraud Act) in Its Entirety Based on New Controlling Authority as moot. Although Counts I and II currently remain as to named Plaintiff Dr. Mitchell Goldman and the putative Pennsylvania dental class

members, the Court at this time will direct the parties to brief any jurisdictional issues that may

arise as a consequence of the Court's determinations herein.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROLE N. HILDEBRAND, et. al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 06-5439 |
| | : | |
| v. | : | |
| | : | |
| DENTSPLY INTERNATIONAL, INC., | : | |
| | : | |
| Defendant. | : | |

**<u>ORDER</u>**

AND NOW, this 25ᵗʰ day of January, 2010, upon consideration of Defendant's Motion to Dismiss Drs. Hildebrand and Jaffin for Lack of Standing (Dkt. No. 63), Plaintiffs' Countermotion for Leave to File Amended Complaint Substituting Corporate Entities for Drs. Hildebrand and Jaffin (Dkt. No. 69), and the responses thereto, it is hereby ORDERED as follows:

1. Defendant's Motion is GRANTED;

2. Countermotion is DENIED;

3. Counts I and I are DISMISSED as to the putative Pennsylvania periodontal class members and as to the putative New Jersey class members;

4. Count III is DISMISSED in its entirety;

5. Dentsply's Motion to Dismiss or for Judgment on the Pleadings on Count II (Negligent Design) as to New Jersey Plaintiffs and Count III (New Jersey Consumer Fraud Act) in Its Entirety Based on New Controlling Authority (Dkt. No. 87) is hereby DENIED as MOOT; and

6.  The parties shall submit to the Court briefing on any jurisdictional issues that

may arise as a consequence of this Order by <u>February 19, 2010.</u>

BY THE COURT:

<u>/s/ C. Darnell Jones II   </u>
C. DARNELL JONES II  J.